IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
Martinsburg Division

| UNITED STATES OF AMERICA | : | |
| --- | --- | --- |
| | : | |
| vs. | : | 3:20-CR-46 |
| | : | |
| MONROE MERRELL, | : | |
| | : | |
| Defendant. | : | Chief Judge Gina M. Groh |
| | : | |

## MOTION TO COMPEL DISCLOSURE OF JAILHOUSE INFORMANT COOPERATION, INFORMATION, AND TESTIMONY

Monroe Merrell, by undersigned counsel, respectfully moves this Court to order the Government to provide timely notice to the defense of its intention to rely on testimony of individuals incarcerated with Mr. Merrell and to disclose to the defense: (1) the names of any individuals who have been incarcerated with Mr. Merrell and who have provided information to the Government or its agents regarding Mr. Merrell; (2) the substance of any statements by such individuals; (3) any statements alleged to have been made by Mr. Merrell to, or overheard by, such individuals; (4) any discussion of benefits to be provided for information regarding Mr. Merrell by such individuals, by the Government or its agents, including any prosecutor, law enforcement officer, or corrections officer. In making this Motion, Mr. Merrell relies on Rules 12(b)(4) and 16(a)(1)(A) of the Federal Rules of Criminal Procedure and on his rights under the Fifth and Sixth Amendments to the United States Constitution.

In support of this Motion, Mr. Merrell states as follows:

1. Mr. Merrell is charged with serious felonies, including three homicides. If convicted at his February 2025 trial, he faces multiple life sentences.

2. Mr. Merrell has been incarcerated in various locations in Virginia, West Virginia, and

1

Ohio since his arrest in 2020, during which time he has been held with other pretrial detainees and convicted individuals, many of whom face extended prison sentences and thus have great incentive to provide information to the authorities.

3. Prosecuting authorities frequently attempt to develop jailhouse informants and often introduce their testimony against defendants.

4. Mr. Merrell's trial is scheduled to begin February 18, 2025. If the Government will rely on jailhouse informants in its prosecution, the defense needs sufficient information and time to investigate the claims made and the backgrounds of the witnesses so that the defense can raise pre-trial constitutional challenges to such evidence and be prepared to cross-examine such witnesses if they are called at trial.

## **ARGUMENT**

Defendants facing serious criminal charges are under extreme pressure to work with prosecutors and law enforcement to provide incriminating evidence against themselves and others in exchange for beneficial treatments ranging from improved jail conditions to reduced charges and lower sentences. *See, e.g.*, Russell D. Covey, *Abolishing Jailhouse Snitch Testimony*, 49 WAKE FOREST L. REV. 1375 (2014) (compiling research regarding informant unreliability and pressures). As discussed below, these "jailhouse informants" (also known as "jailhouse snitches") tend to have serious credibility problems that require significant investigation. Constitutionally effective investigation, however, takes time. Thus, this Court should require the Government to give notice of any jailhouse informants it wishes to use at trial, ensuring that the defense has an adequate opportunity to investigate.

Scholars and criminal justice experts are in near consensus that jailhouse informants are not only highly unreliable, but also that special precautions must be taken when their testimony

is used. *See, e.g.*, *Zappulla v. New York*, 391 F.3d 462, 470 n.3 (2d Cir. 2004) ("As a general matter, we note that numerous scholars and criminal justice experts have found the testimony by 'jail house snitches' to be highly unreliable.'"); Daryl K. Brown, Essay, *Rationing Criminal Defense Entitlements: An Argument from Institutional Design*, 104 COLUM. L. REV. 801, 824 (2004) (noting that "jailhouse informants with critical state evidence are sources with higher-than-average rates of unreliability."). It is by now universally recognized that jailhouse informants have a significant incentive to offer perjured testimony to curry favor with prosecutors. *Zappulla*, 391 F.3d at 470 n.3; *see also* State of Illinois, G. Ryan, Governor, *Report of the Governor's Commission on Capital Punishment* (2002) ("Ryan Report").

There are strong examples of unreliable jailhouse informants in both caselaw and practical experience with the modern criminal justice system. In *Zappulla v. New York*, for example, the defendant's conviction was partly based on a jailhouse informant's testimony that the defendant confessed to him. *Zappulla*, 391 F.3d at 470. The Second Circuit reversed the conviction, in part because the informant's testimony was "far from credible," as he first learned about the case from an inmate law clerk and admitted that he would "steal, lie, and rob people, even his own family, in order to purchase crack, and in fact, continued to use and sell drugs while in prison. *Id.* at 470–71. The unsavory nature of the informant in *Zappulla* is all too typical of the jailhouse informant system.

In another example, in 1999, the Chicago Tribune published a five-part series entitled "The Failure of the Death Penalty in Illinois." The third part of the series documented the abuses of the jailhouse informant system in Illinois. *See* Steve Mills & Ken Armstrong, *The Inside Informant*, CHI. TRIB., Nov. 16, 1999, at 1. The paper told the story of Tommy Dye, who "lies about almost everything, even his own name," and who has been documented as lying under

3

oath. *Id*. Nonetheless, Dye's testimony was the centerpiece in the trial that put Steven Manning, a former Chicago police officer, on death row. *Id*. The paper went on to report that in Illinois, at least forty-six inmates had been sent to death row in cases where the prosecution used a jailhouse informant, and that in about half of those cases, the informant played a significant role in the conviction. *Id*.

The paper reported on the ease with which informants can glean details of a crime from newspapers or another inmate's legal papers, and related the story of Willie Williams, a three-time felon, who testified that he read newspaper accounts of the 1988 slayings of five people before contacting police to tell them that a friend had confessed to the killings. *Id*. Williams was an important witness for the prosecution in the conviction of his friend, who was still on death row at the time of the article. *Id*. Similarly, Leslie Vernon White was a high-profile jailhouse informant who admitted that he had lied in a dozen cases for prosecutors in California. *Id*. As a result of high-profile informants such as White, Oklahoma's highest criminal court required prosecutors to disclose an informant's criminal background, any deal they have made with him, any alleged confession he obtained, and all other cases in which the informant played a similar role—no matter how minor. *Id*.

At least partly in response to the series in the Chicago Tribune, then Governor Ryan ordered a comprehensive review of the administration of the death penalty in Illinois. The Governor's Commission on Capital Punishment produced the lengthy "Ryan Report" that included 85 recommendations to make it less likely that an innocent person would be sentenced to death in the state. "[I]t takes only a cursory reading of the [Ryan Report] to recognize that it describes men released who were demonstrably innocent or convicted on grossly unreliable evidence." *Kansas v. Marsh*, 548 U.S. 163, 199 n.2 (2006) (Souter, J., dissenting). The Ryan

4

Report recognized the suspect nature of jailhouse testimony and the question mark that it left on the reliability of the state's death convictions and recommended that police, prosecutors, capital case defense attorneys, and judges receive periodic training on the risk of false testimony by in-custody informants.[1]

The Ryan Report made three specific recommendations as to how jailhouse informants should be handled in pre-trial proceedings to increase reliability and reduce the risk of wrongful convictions. Recommendation 50 would require that "any discussions with a witness or the representative of a witness concerning benefits, potential benefits or detriments conferred on a witness by any prosecutor, police official, corrections official or anyone else" by reduced to writing and disclosed to the defense in advance of trial." Ryan Report at 30. Recommendation 52 would require a pretrial evidentiary hearing to determine the reliability and admissibility of the informant's testimony. And most relevant for this Motion, Recommendation 51 would require that "whenever the state may introduce testimony of an in-custody informant who has agreed to testify for the prosecution in a capital case to a statement allegedly made by the defendant, at either the guilt or sentencing phase, the state should promptly inform the defense as to the identification and background of the witness." *Id.*

Jailhouse informants are often compensated for their testimony, whether in the form of correctional benefits, reduction of charges, or leniency at sentencing. In the context of witnesses compensated monetarily for their testimony, the Fourth Circuit has expressed serious concern and has enforced stringent judicial controls on the practice. *United States v. Levenite*, 277 F.3d 454, 459–62 (4th Cir. 2002). Testimony made for benefit "create[s] fertile fields from which

---

[1] The Ryan Report is available at https://ip-no.org/wp-content/uploads/2018/05/report-of-the-Ryan-Commission.pdf (last accessed October 1, 2024).

5

truth-bending or even perjury could grow, threatening the core of a trial's legitimacy." *Id*. at 462. Compensated testimony "may be approved only rarely and under the highest scrutiny," including that: (1) the compensation arrangement must be disclosed to the defendant, (2) the defendant must have the opportunity to cross-examine the witness, and (3) the jury must be instructed to engage in heightened scrutiny of the witness. *Id.*[2] Where the compensation is:

> contingent on the content or nature of the testimony given, the court must ascertain (1) that the government has independent means, such as corroborating evidence, by which to measure the truthfulness of the witness's testimony and (2) that the contingency is expressly linked to the witness testifying truthfully. Moreover, when a witness is testifying under such a contingent payment arrangement, the government has a duty to inform the court and opposing counsel when the witness' testimony is inconsistent with the government's expectation.

*Id*. at 462–63.

The Ninth Circuit has imposed similar judicial scrutiny regarding Government deals with informants, holding "where the prosecution fails to disclose evidence such as the existence of a leniency deal or promise that would be valuable in impeaching a witness whose testimony is central to the prosecution's case, it violates the due process rights of the accused and undermines confidence in the outcome of the trial," *Horton v. Mayle*, 408 F.3d 570, 581 (9th Cir. 2005), and calling such lack of disclosure "unscrupulous." *Silva v. Brown*, 416 F.3d 980, 991 (9th Cir. 2005).

The reliance on jailhouse informants to obtain convictions has the potential for impacting both the finality of convictions and the integrity of the judicial process." *See Lightbourne v. State*, 841 So.3d 431, 443 (Fla. 2003) (Pariente, J., concurring). "The experience shows pretty

---

[2] While *Levenite* concerned a witness who was testifying in exchange for money, the same concerns arise whether the compensation consists of money or reduced criminal sanctions. Indeed, the promise of a reduced sentence may be far more valuable to a defendant than cash. *See Cervantes-Pacheco*, 826 F.2d 310, 315 (5th Cir. 1987) (same analysis applies to informant compensation whether for money or lenience).

much what you would expect—that when the criminal justice system offers witnesses incentives to lie, they will." Center on Wrongful Convictions, *The Snitch System: How Snitch Testimony Sent Randy Steidl and Other Innocent Americans to Death Row*, at 2, *available at* https://www.innocenceproject.org/wp-content/uploads/2016/02/SnitchSystemBooklet.pdf (last visited April 20, 2023).

If the Government relies on jailhouse informants to obtain a conviction, the procedures requested herein are necessary to ensure Mr. Merrell's rights to a fair and reliable trial and sentencing are not violated. Jailhouse informants often discuss their incentives on the phone or to other inmates or use family, friends, or other inmates to research serious cases in which they can provide information. Uncovering such critical impeachment material is an important investigative task that any competent defense team must conduct before trial. Without the identities of jailhouse informants, however, the defense cannot conduct necessary pre-trial investigation. It is thus within the court's authority to require the Government to disclose the existence of jailhouse informant information prior to trial, consistent with the Ryan Report recommendations, in light of the dictates of fundamental fairness, the inherent unreliability of jailhouse informant testimony, and the need to provide the defense with an adequate opportunity to investigate and prepare for trial.

## CONCLUSION

WHEREFORE, Mr. Merrell respectfully moves this Court to enter an order requiring the Government to give notice of its intent to rely on jailhouse informants and to immediately disclose the names of such informants and the information they have provided or are expected to provide the Government regarding Mr. Merrell.

Respectfully submitted,
MONROE MERRELL

s/ Bernadette Donovan

Bernadette M. Donovan
VA BAR 82054
Donovan & Engle, PLLC
1134 East High Street, Unit A
Charlottesville, VA 22902
Office 800-428-5214
Fax 434-465-6866
bernadette@donovanengle.com

Douglas Sughrue
West Virginia Bar No. 11452
429 Fourth Avenue, Suite 501
Pittsburgh, PA 15129
Office 412-391-1629
dsughrue@sughruelaw.com

*Counsel for Monroe Merrell*

### CERTIFICATE OF SERVICE

     I, Douglas Sughrue, Esq., hereby certify that on October 2, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record. A Notice of Electronic Filing will be served on:

Kimberley D. Crockett
Jennifer T. Conklin
Kyle R. Kane
Assistant United States Attorneys
United States Attorney's Office
217 West King Street, Suite 400
Martinsburg, WV 25411
Kimberley.D.Crockett@usdoj.gov
Jennie.conklin@usdoj.gov
Kyle.kane@usdoj.gov

s/ Douglas Sughrue